**THE HOOVEN & ALLISON COMPANY, Appellant v. EVATT, Tax Commr., Appellee.**

Before The Board of Tax Appeals.
Department of Taxation of Ohio

No. 4441. Decided March 19, 1943.

244

Thomas C. Lavery, Cincinnati, and Marcus E. McCallister, Xenia, for appellant.

Thomas J. Herbert, attorney general, Columbus, and Aubrey A. Wendt, assistant attorney general, Columbus, for appellee.

## OPINION

The appellant, a corporation, filed an inter-county tax return for each of the years 1938, 1939 and 1940. In each of said returns appellant omitted from its manufacturing inventory certain fibers produced in the Philippine Islands and in foreign countries claiming that said fibers were imports and not taxable by the State of Ohio. From its 1938 return appellant omitted fibers coming from the Philippine Islands of the value of $57.500.00 and fibers coming from other countries of the value of $410,030.00; from its 1939 return appellant

omitted fibers coming from the Philippine Islands of the value of $49,750.00 and fibers coming from other countries of the value of $225,080.00; from its 1940 return appellant omitted fibers coming from the Philippine Islands of the value of $29,800.00 and fibers coming other countries of the value of $191,990.00, said amounts representing the average value of said fibers held in appellant's inventory during the preceding years respectively. On July 3, 1941 the Tax Commissioner made amended assessments against appellant for said years increasing appellant's average inventory by the above amounts respectively. Appellant filed an application for review and redetermination with the Tax Commissioner which was denied, whereupon the appellant filed the appeal herein.

The appellant is engaged in the business of manufacturing rope and twine products at Xenia, Ohio, in which manufacturing business it uses various fibers produced in the Philippine Islands and in foreign countries. Part of appellant's inventory consisted of these fibers in the original packages. Appellant claims that said fibers are imports and under the provisions of the Constitution of the United States are immune from taxation by the state of Ohio.

The record shows that these fibers were purchased from New York firms acting as agents of the vendors and shippers of said goods, part of which goods came from the Philippine Islands and part of which came from foreign countries; that these goods were purchased under written contracts prepared in duplicate or triplicate by the New York agent; that said contracts were signed in New York by the agent and forwarded to Xenia, Ohio, where they were signed by the appellant, one copy of which was retained by appellant and the others returned to the New York agent. Said contracts provide for delivery on dock at Baltimore, Maryland or other United States port; for payment on delivery on dock at destination, title to remain in seller until goods are fully paid for; that any increase in the cost of ocean transportation of said goods will be for the buyer's account and any decrease for buyer's benefit; and that in case of loss at sea the portion of the goods so lost shall be excluded from the contract and the quantity reduced accordingly. The record shows that these goods were shipped by the seller to the port of destination consigned to the seller's agent. In some instances a sight draft was attached to the bill of lading and in some instances the goods were consigned to the order of a bank, notify shipper's agent and the appellant. The goods while at sea were insured either by the seller or seller's agent. In case of loss at sea the insurance was payable either to seller or seller's agent. In cases where the bill of lading had a sight draft attached or was forwarded to a bank, it was taken up by the seller's agent. On arrival of the goods they were cleared through the port of entry by the seller's agent. The duties and other expenses, if any, were paid by the seller's agent, said expenses being included in the contract price. In practice the agent did not enforce the contract provision for cash on delivery but

shipped said goods by rail from port of entry to appellant under a straight bill of lading. After arrival of the goods at Xenia, Ohio, appellant paid the contract price by check payable to seller's agent. The freight charges from port of entry to appellant's plant were paid by the appellant.' While said goods were at sea the buyer carried "increased value insurance". War risk insurance while the goods were at sea was taken out by the shipper or its agent for the account of the buyer.

Goods that still retain their character as imports at the time the tax is proposed to be assessed are immune from state taxation under the provisions of Article I, Section 10 of the Constitution of the United States. In this connection it must be established that the taxpayer is the importer, that the goods are still in the original packages in which they were imported and that they have not been sold or mortgaged by the importer or in any other way used or commingled with its goods and property in the state so as to lose their character as imports. The decisions seem to rest on the underlying principle that the goods are imported for sale and that while held by the importer they are still in a sense in transitu.

In Brown et v The State of Maryland, 12 Wheat. 419, 6 L. Ed. 678, 688, it is stated:

"Sale is the object of importation, and is an essential ingredient of that intercourse, of which importation constitutes a part. It is as essential an ingredient, as indispensable to the existence of the entire thing, then, as importation itself. It must be considered as a component part of the power to regulate commerce."

In the instant case the record shows that these goods are in a warehouse at the manufacturing plant of the appellant and in the original packages; that they are held the same as any other raw material on hand and ready for use as the appellant may require them in its manufacturing business; that they are carried as a part of appellant's manufacturing inventory and reflected in its financial statement the same as any other asset of the company; that these statements are used by the appellant in the regular course of its business, furnished to banks for the purpose of obtaining credit, etc.; and that said goods are not held for sale. Even if appellant is the importer it may well be questioned whether said goods maintain the characteristics of imports within the meaning of the Constitution. They have reached their final destination. They cannot be said in any sense to be still in commerce, or in transitu, or held in connection therewith.

The word imports as used in the Constitution means articles imported from a foreign country and does not include articles transported from a state or territory of the United States to some other state or territory of the United States. 14 Diamond Rings v United States, 183 U. S.,

176, 46 L. Ed., 138. See American Steel & Wire Company v. Speed, 192 U. S. 500, 48 L. Ed. 538. Brown v. Houston, 114 U S. 622, 29 L. Ed. 257. In the latter case the first syllabus is as follows:

"1. The term 'imports' as used in that clause in the Constitution which declare that 'No State shall, without the consent of Congress, law any imposts or duties on imports or exports,' does not refer to articles carried from one State to another, but only to articles imported from foreign countries into the United States."

The tariff act contains the following definitions, 19 U. S. C. A. 1336:

"(h) For the purpose of this section—(1) The term 'domestic article' means an article wholly or in part the growth or product of the United States; and the term 'foreign article' means an article wholly or in part the growth or product of a foreign country.

(2) The term 'United States' includes the several States and Territories and the District of Columbia.

(3) The term 'foreign country' means any empire, country, dominion, colony, or protectorate, or any subdivision or subdivisions thereof (other than the United States and its possessions)."

It follows that that portion of the goods involved shipped from the Philippines are not imports within the meaning of the Constitution and are not exempt from taxation.

The goods shipped from foreign countries were imported, but if they were imported before title became vested in the appellant, they have lost their characteristics as imports and are subject to state taxation.

In Waring v Mayor, etc., of Mobile, 8 Wall. 110, 19 L. Ed. 342, 345, the court referring to the federal statute said:

" 'All duties on goods, wares and merchandise imported shall be paid or secured to be paid before a permit shall be granted for landing the same;' which shows, to a demonstration that all the salt in this case was imported before the property in the same became vested in the complainant. * * * No one pretends that any of those acts can be performed before the goods are imported."

In that case the court held that the seller was the importer and while the facts are somewhat different, the material elements of risk, insurance, etc., are similar to those of the instant case.

The present tariff act provides, 19 U. S. C. A., 1483:

"For the purposes of this title—(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to

order, by the consignor, shall be deemed the consignee thereof. The underwriters of abandoned merchandise and the salvors of merchandise saved from a wreck at sea or on or along the coast of the United States may be regarded as consignees.

(2) A person making entry of merchandise under the provisions of subdivision (h) or (i) of section 484 (Sec. 1884(h) or (i) of this title) (relating to entry on carrier's certificate and on duplicate bill of lading, respectively) shall be deemed the sole consignee thereof."

19 U. S. C. A. 1484 (a) provides:

"Except as provided in sections 490, 498, 552, and 553 and in subdivision (j) of section 336 of this act (secs. 1490, 1498, 1552, and 1553 and in sec. 1336 (j) of this title), and in subdivisions (h) and (i) of this section, the consignee of imported merchandise shall make entry therefor either in person or by an agent authorized by him in writing under such regulations as the Secretary of the Treasury may prescribe. Such entry shall be made at the customhouse within forty-eight hours, exclusive of Sundays and holidays, after the entry of the importing vessel or report of the vehicle, or after the arrival at the port of destination in the case of merchandise transported in bond, unless the collector authorizes in writing a longer time."

In the instant case the goods were consigned to the seller's agent and under the provisions of the present tariff act, above quoted, said agent was the owner until the goods were cleared through customs. These provisions are similar to the provisions of the tariff act considered in Waring v Mayor, supra.

In Lafontan v Elting, 54 Fed. (2d), 664, 666, it was held:

"It is urged, however, by the defendants that the bill in the present case was a straight bill made out to American Import & Export Corporation 'or * * *' assigns,' and that delivery could therefore properly be made to the named consignee without production of the bill. That, undoubtedly, is the law in this country with respect to railroad carriers, and the Uniform Bills of Lading Acts * * * ; but it is otherwise in England with respect to water carriers * * * .

"In the present case, delivery under the federal statute could not legally be made without the production of the bill of lading, unless bond was given. No differentiation is made in that respect between straight and order bills, * * *."

Both the appellant and appellee in their briefs quote from the Uniform Sales Act, Ohio General Code, Section 8399. Whether the provisions of this act are applicable to these contracts, it is unnecessary to decide. It may be stated, however, that in so far as the issues herein involved are concerned, said act is only declaratory of

the legal principles existing prior thereto under which the same result would be reached.

In **B. & O. S. W. Ry. Co. v Good et, 82 Oh St 278,** it was held in the first syllabus:

"In sales of specific chattels for cash on delivery, delivery and payment are concurrent acts, and delivery in the expectation of receiving immediate payment is not absolute but conditional, and, when there is no waiver of payment, the property does not pass until the price is paid."

In **Rehr v Lumber Company, 110 Oh St 208, 214,** the court held that Rule 4 of §8399 GC, was not applicable and stated:

"The facts disclosed by the evidence, heretofore pointed out, warrant the conclusion that the intention of the parties was that there should be no complete delivery of the timbers until the conditions upon which delivery was to be completed had been complied with; * * * ."

The contracts herein involved come within the provisions of Rule 5 of §8399 GC, which is as follows:

"If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

In **35 O. Jur. Art. 77, p. 791,** it is stated:

"If the contract calls for shipment 'f.o.b. buyer's point.' it anticipates delivery by the seller at that point, and, since something remains to be done by the seller before he has carried out his contractual obligation, the normal presumption would be that title did not pass until delivery at the stated point. **Section 8399, GC,** Rule 5, carries out this natural assumption."

In the instant case the goods were delivered by the seller on dock at Baltimore. The price was as a "landed price" and under the provisions of the general law or the Uniform Sales Act, title did not pass prior to the point of delivery.

It follows that the goods purchased from foreign █ countries were not imported by the appellant and that said goods are taxable by the State of Ohio.

BOARD OF TAX APPEALS.